UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **CHAMBERS OF**<br>**CHARLES D. AUSTIN**<br>**UNITED STATES MAGISTRATE JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>**(410) 962-7810**<br>**MDD_CDAChambers@mdd.uscourts.gov** |

August 14, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Tyler H. v. Martin O'Malley, Commissioner, Social Security Administration*
      Civil No. 23-1944-CDA

Dear Counsel:

On July 20, 2023, Plaintiff Tyler H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 9 and 10).[1] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on May 29, 2020, alleging a disability onset of September 18, 2018. Tr. 78-79. Plaintiff's claims were denied initially and on reconsideration. Tr. 78, 97. On August 3, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 40-77. Following the hearing, on October 25, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 7-32. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file "briefs" instead of "motions for summary judgment." Here, Plaintiff filed a motion for summary judgment and Defendant filed a brief. ECFs 9, 10.

[2] 42 U.S.C. §§ 301 et seq.

## II.  THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 18, 2018, the alleged onset date[.]"  Tr. 12.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "osteoarthritis, osteonecrosis, rheumatoid arthritis, dysfunction of the major [bilateral hip] joints, lumbar radiculopathy, depression, anxiety, attention-deficit hyperactive disorder, and bipolar disorder[.]"  Tr. 13 (bracket in original).  The ALJ also determined that Plaintiff suffered from the non-severe impairments of obesity, asthma, obstructive sleep apnea, and disorders of thrombosis and hemostasis.  Tr. 13.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 14.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except occasionally able to climb ramps or stairs. Occasionally able to climb ladders, ropes, or scaffolds. Occasionally able to balance, stoop, kneel, crouch, or crawl. Limited to frequent use of either upper extremity for overhead reaching. Limited to frequent use of the right lower extremity for pushing/pulling or operation of foot controls. Avoid work at unprotected heights. Avoid work requiring commercial driving or operation of moving machinery. Able to understand and carry out simple instructions and routine, repetitive tasks. Avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers and side-by-side and the work of one affects the work of the others). Able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated by normal breaks. Occasionally able to change activities or work settings during the workday without it being disruptive. Occasionally able to deal with changes in a routine work setting. Able to have occasional interaction with supervisors, co-workers, and/or the general public.

Tr. 18.  The ALJ determined that Plaintiff was unable to perform past relevant work as a Bartender

(DOT[3] #312.474-010) but could perform other jobs that existed in significant numbers in the national economy. Tr. 25-26. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 27.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff's overarching argument is that substantial evidence does not support the ALJ's RFC. ECF 9-1, at 10. Specifically, Plaintiff moves for remand so that the "ALJ can account for [Plaintiff's] fluctuations in his mood due to depression, anxiety, and bipolar disorder as well as his pain due to his physical impairments[.]" *Id.* Plaintiff directs the Court to various aspects in the record that the ALJ failed to consider when making his decision.[4] *Id.* at 9-10. Defendant counters that the ALJ's decision "demonstrates a thorough consideration of all (and not just some) of the evidence in the record, including fluctuations in Plaintiff's mood[.]" ECF 10, at 6. Moreover, Defendant contends that the ALJ's RFC finding is supported by substantial evidence and Plaintiff's

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

[4] The records Plaintiff cites include 39 transcranial magnetic stimulation ("TMS") treatments from January 7, 2020-March 19, 2020; a report from Greenbrook TMS on December 30, 2019; Plaintiff's hospitalization at Shephard Pratt Health System from April 9, 2020 through April 14, 2020 with several mental health diagnoses; a June 2, 2021 visit to Luminis Health Mental Health Specialists; treating psychotherapist Christopher Hall psychological assessment precluding Plaintiff from any substantial gainful activity; and the vocational expert's testimony. ECF 9-1, 9-10.

argument amounts to an "invitation to reweigh evidence[.]" *Id.*

When evaluating a claimant's subjective complaints, ALJs use the two-step analytical framework set forth in 20 C.F.R. § 404.1529 and described in SSR 16-3p. *See Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020)). Step one of this process requires an ALJ to determine whether a "medically determinable impairment" exists that could "reasonably be expected to produce the claimant's alleged symptoms."[5] *Id.* (quoting *Arakas*, 983 F.3d at 95). At the second step, the ALJ assesses "the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain," a claimant may "rely exclusively on subjective evidence" at the second step. *Id.* (quoting *Arakas*, 983 F.3d at 96). Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'" *Id.* (quoting *Arakas*, 983 F.3d at 96) (brackets in original); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Recently, the Fourth Circuit extended *Arakas*, which related to discounting subjective symptoms of fibromyalgia, to that of Major Depressive Disorder ("MDD"). *Shelly C. v. Comm'r, Soc. Sec. Admin.*, 61 F.4th 341, 361 (4th Cir. 2023).

Here, the ALJ erred in their assessment at the second step of this process. At the first step, the ALJ acknowledged Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." But at the second step, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 20. This case is, as Plaintiff argues, analogous to *Shelly C.* In *Shelly C.*, the Fourth Circuit remanded to the Commissioner because the ALJ failed to account for the claimant's subjective complaints and the claimant "was entitled to rely on the subjective evidence to demonstrate that her pain was sufficiently persistent and severe to support a disability finding." 61 F.4th at 360. The Fourth Circuit held that "because of the unique and subjective nature of MDD, subjective statements from claimants should be treated as evidence *substantiating* the claimant's impairment." *Id.* 361 (internal citation omitted) (emphasis in original). The court held that, "[b]ecause the ALJ improperly increased *Shelley C.*'s burden of proof, in requiring that her subjective statements be validated by objective medical support, we must find error." *Id.* at 96.

The Court now finds that the ALJ erred in discounting Plaintiff's subjective complaints as inconsistent with the record's medical evidence. The ALJ cannot not dismiss Plaintiff's subjective complaints based entirely upon the belief that they were not corroborated by the record's medical evidence. *Shelly C.*, 61 F.4th at 360 (internal citation omitted) ("The Fourth Circuit has long held that while there must be objective medical evidence of some condition that could reasonably

---

[5] A "symptom" is a claimant's "own description or statement of [their] physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

produce the pain, there need not be objective evidence of the pain itself or its intensity."). The ALJ here failed to adequately account for Plaintiff's subjective complaints. For example, Plaintiff testified that:

> His primary issues are related to his mental health conditions. He sees a therapist about once a month, and a psychiatrist once every one-to-two months. His psychiatrist prescribes medication. He has issues with psychosis and will zone out a lot. He has issues with fatigue and will lie around crying a lot. He has anxiety and is scared to leave the house. He has trouble with attention and concentration. He has difficulty watching a television show all the way through and paying attention when his wife is talking to him. He has racing thoughts "all the time." He has trouble completing tasks and finishing things he starts. He has highs and lows, mostly lows. He had a manic episode in April 2020 and has had primarily depressive symptoms since. He gets lethargic and has crying spells. He was hospitalized in Sheppard Pratt in April 2020. He lost touch with reality, he couldn't sleep and was not making sense. He threatened to harm himself. He flipped over a couple of tables and the police were called, but he was not arrested. He gets suicidal thoughts once a month. He had 39 TMS treatments prior to the April 2020 incident, which may have jump started his manic episode. Every day is pretty much the same. He has some bad days that he will spend in bed and not be able to function. He would have to call out of work on these days. He has crying spells one-to-two times a month, which can last a few hours, or the whole day, and they come out of nowhere. He has a lot of trouble being around people these days. He has social anxiety, and he wonders what others are thinking. He gets anxious around a lot of people, and he starts to feel claustrophobic. He has difficulty dealing with stress. He has not felt like himself since April 2020, and something is definitely off.

Tr. 19. The ALJ improperly discounted Plaintiff's subjective complaints, therefore providing an inadequate explanation as to the inconsistencies in the record. *Lasharne W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-21-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023) (referring to *Shelley C.* 61 F.4th at 360) ("The ALJ improperly ignored the waxing and waning nature of depression symptoms by citing only to treatment notes where the claimant was stable and by omitting evidence of the claimant's subsequent periods of intense depression symptoms.").

Additionally, substantial evidence does not support the ALJ's conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence in the record because of Plaintiff's admitted daily activities and abilities. Tr. 20. The ALJ "cherry-picked from the record, highlighting [Plaintiff's] good moments and bypassing the bad." *Shelly C.*, 61 F.4th at 360. This violated the ALJ's "obligation to consider all relevant medical evidence," which prohibits him from "simply cherrypick[ing] facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017).

Plaintiff lists a series of evidence that the ALJ "failed to consider[.]" ECF 9-1, at 9-10.

The Court agrees with this conclusion. The ALJ mischaracterizes Plaintiff's 39 TMS treatments from January 7, 2020-March 19, 2020. The ALJ first listed that Plaintiff underwent TMS treatments from the hearing testimony, when the ALJ stated that Plaintiff "**had 39 TMS treatments** prior to the April 2020 incident, which may have jump started his manic episode." Tr. 19 (emphasis added). The ALJ again discussed Plaintiff's TMS treatments when he "presented in January 2020 for [TMS] treatment for recurrent severe major depressive disorder." Tr. 22. Plaintiff, on examination, portrayed a sad affect; however, the ALJ stated that "both his appearance and behavior were appropriate, his speech and thought content were normal, his memory was intact, he denied any suicidal or homicidal ideations, and he remained alert and oriented to person, place and time[.]" Tr. 22. The ALJ cannot discount Plaintiff's reported, subjective symptoms with normal evaluations. *See India G. v. Kijakazi*, No. DLB-20-1704, 2021 WL 3930430, at \*3 (D. Md. Sept. 1, 2021) (Even if such evaluations were normal, "the Fourth Circuit noted [in *Arakas*] that normal, objective clinical and laboratory results are not inconsistent with allegations of disabling pain."). The ALJ did not include any portion of Plaintiff's TMS treatments within his analysis; instead, they focused on Plaintiff's appearance and alertness. This omission is critical, as TMS treatments are "only offered and administered to those with the most severe cases of depression." *Shelly C.*, 61 F.4th at 364. The ALJ also failed to evaluate any of the corresponding treatment notes that indicated that Plaintiff sought TMS treatment to "feel[] better and function[] better as he is largely incapacitated by his illness despite daily compliance with medication." Tr. 840. Therefore, similar to the ALJ in *Shelly C.*, who discounted Plaintiff's TMS treatments, the ALJ here "[o]verlook[ed] the extensive and nuanced treatment [Plaintiff] received . . . [and] inappropriately played doctor in contravention of the requirements of applicable regulations . . . ." *Shelly C.*, 61 F.4th at 364.

The ALJ then discussed that in March 2020, after the treatments, Plaintiff "indicated that he had minimal depression, and that he only had panic attacks occasionally." *Id.* The ALJ did not mention that one month following these treatments, Plaintiff was involuntarily admitted on an emergency petition to Shephard Pratt Health System due to a manic episode that included a suicide attempt. Tr. 22, 355. Thus, the ALJ failed to appreciate the full "comprehensive image of the waxing and waning of Plaintiff's chronic depression . . . ." *Shelly C.*, 61 F.4th at 363.

Yet another instance of selective discussion occurs where the ALJ mentions Plaintiff's hospitalization at Shephard Pratt Health System which occurred from April 9, 2020 through April 14, 2020. The ALJ stated that Plaintiff "presented for care via emergency petition in the setting of anxiety, pressured speech, manic and irrational behavior, and flight of ideas[.] Yet, he also reported that he recently ran out of medications, although he could not state which ones[.]" Tr. 22; *see Latonya W. v. Kijakazi*, No. SAG-20-1413, 2021 WL 4170428, at \*3 (D. Md. Sept. 14, 2021) (citing SSR 96-7p, 1996 WL 374186 (July 2, 1996)) ("[T]he mere existence of some evidence of noncompliance does not on its own permit a finding that Plaintiff is less credible, intentionally noncompliant, or suffering symptoms less that described[.]"). The ALJ noted that following his "brief treatment" at Shephard Pratt, Plaintiff's mood improved, he was pleasant, he had neither manic nor psychotic symptoms, he had no suicidal or homicidal ideations, and he was ready for discharge. Tr. 22  Plaintiff was diagnosed with "bipolar disorder and treated with Depakote and

Cariprazine[,] and [l]ater in April 2020, [Plaintiff's] wife reported that he was stabilized with his new medications. *Id.*

This discussion reflects yet another similarity to *Shelly C.* There, the ALJ "brushed off Shelly C.'s intentional overdose," by stating that "she was safely discharged from the hospital one day after the overdose." *Shelley C.*, 61 F.4th at 362. Here, the ALJ failed to mention or consider similar critical information. For example, the ALJ failed to include that the reason for the medical petition was because "[Plaintiff] was standing on the outside of the railing on [the family's] second story balcony threatening to jump[,]" that "[Plaintiff] flipped a kitchen island on wheels and threw a trash can in his home[; and that Plaintiff] also punched a wall out of frustration in the [hospital.]" Tr. 355. The ALJ again mischaracterizes Plaintiff's MDD symptoms only one month later. In May 2020, treatment notes endorsed "hypomania," "anxiety," and pressured speech. Tr. 22. But the ALJ discounted these symptoms by stating that Plaintiff was "alert and cooperative, he was well groomed, his attention and concentration were normal . . . ." Tr. 23.

Plaintiff insists that the ALJ failed to consider a June 2, 2021 visit to Luminis Health Mental Health Specialists. The Court agrees that the ALJ erred, not for failure to consider but because the ALJ mischaracterized the evidence concerning that visit. The ALJ explained, "June 2021 mental status testing revealed that the claimant's mood was depressed and anxious. Yet, he was well groomed, his attention and concentration were normal, his speech was fluent, his memory was intact, his affect was broad, and both his insight and judgment were good (Exhibit 20F/41)." Tr. 23. This analysis considers only the mental status exam within this appointment, excluding the description of Plaintiff's symptoms and the medical provider's opinions. For example, Plaintiff presented due to his "depression seeping in" and that he "just want[s] to stay in bed." Tr. 1226. The medical provider then increased all three of Plaintiff's medications to help with sleep, bipolar depression, and ADHD. Tr. 1232. Again, the ALJ improperly discounts Plaintiff's subjective symptoms (and objective evidence substantiating the same) with normal evaluations. *See India G.*, 2021 WL 3930430, at *3.

Because the ALJ improperly increased Plaintiff's burden of proof, in effectively requiring that his subjective statements be validated by objective medical support, the Court must find error. *Towanna G. v. Kijakazi*, No. 21-1711-BAH, 2022 WL 4017417, at *4 (D. Md. Sept. 2, 2022) (finding that the ALJ erred by "fail[ing] to adequately explain how or why other evidence in the record [was] more credible" than the plaintiff's testimony). Furthermore, the ALJ's decision to disregard Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of her symptoms is unsupported by substantial evidence when the ALJ found they were inconsistent with the medical evidence in the record. Thus, I am unable to find that the ALJ's determination is supported by substantial evidence and find that remand is required.

V. **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 9, is DENIED and pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with

*Tyler H. v. O'Malley*
Civil No. 23-1944-CDA
August 14, 2024
Page 8

this opinion.  The clerk is directed to CLOSE this case.  Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

                                          Sincerely,

                                          /s/

                                        Charles D. Austin
                                        United States Magistrate Judge